1

2

3

4

5    **UNITED STATES DISTRICT COURT**

6    **EASTERN DISTRICT OF CALIFORNIA**

7

8

9

10

11   ABDULLO IDIEV,                              ) Case No.: 1:25-cv-01030-SKO (HC)
                                                 )
12             Petitioner,                       ) ORDER DENYING RESPONDENT'S MOTION
                                                 ) TO DISMISS, GRANTING THE PETITION FOR
13                                               ) WRIT OF HABEAS CORPUS, AND DIRECTING
                                                 ) RESPONDENT TO PROVIDE PETITIONER
14        v.                                     ) WITH A BOND HEARING BEFORE AN
                                                 ) IMMIGRATION JUDGE WITHIN 30 DAYS
15                                               )
     WARDEN OF THE GOLDEN STATE                  )
16   ANNEX DETENTION FACILITY, et al.,           ) ORDER DIRECTING CLERK OF COURT TO
                                                 ) ENTER JUDGMENT, TERMINATE
17                                               ) OUTSTANDING MOTIONS AND CLOSE CASE
               Respondents.                      )
18                                               )

19

20        Petitioner is an immigration detainee proceeding pro se with a petition for writ of habeas

21   corpus pursuant to 28 U.S.C. § 2241.  All parties having consented to the jurisdiction of the Magistrate

22   Judge, on August 26, 2025, the case was assigned to the undersigned for all purposes, including trial

23   and entry of final judgment. (Doc. 12.)

24        Petitioner filed the instant petition on August 15, 2025. (Doc. 1.)  On September 17, 2025,

25   Respondent filed a motion to dismiss the petition. (Doc. 13.) Petitioner did not file an opposition, and

26   filed two notices of supplemental documentation on September 30, 2025, and October 27, 2025.

27   (Docs. 14, 15.)

28

1    Petitioner challenges his continued detention by the Bureau of Immigration and Customs

2  Enforcement ("ICE").  He claims his prolonged detention without a bond hearing violates his

3  procedural due process rights under the Fifth Amendment.  He claims he should be immediately

4  released, or alternatively, provided a bond hearing before an immigration judge ("IJ") at which the

5  Government must justify his continued detention by clear and convincing evidence.

6    For the reasons discussed below, the Court will deny Respondent's motion to dismiss, grant the

7  petition, and direct Respondent to provide Petitioner with a bond hearing before an IJ.

8  **I.    BACKGROUND**

9    Petitioner is a native and citizen of Uzbekistan. (Doc. 13-1 at 6.) He entered the United States

10  on April 16, 2024, and applied for admission at the San Ysidro, California port of entry. (Doc. 13-1 at

11  6.) The immigration officer determined he was ineligible for entry pursuant to Immigration and

12  Nationality Act ("INA") § 212(a)(7)(A)(i)(I) and placed into expedited removal proceedings. He is

13  subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1). (Doc. 13-1 at 2.)

14    Petitioner claimed a fear of persecution should he be returned to Uzbekistan and was referred

15  to an asylum officer for interview. (Doc. 13-1 at 2.)  The asylum officer found Petitioner had a

16  credible fear of persecution or torture and placed Petitioner in removal proceedings on May 10, 2024.

17  (Doc. 13-1 at 2.)

18    On June 17, 2024, Petitioner requested release on parole but failed to provide supporting

19  documents. (Doc. 13-1 at 2.)  On July 25, 2024, Petitioner again requested release on parole and

20  supplied supporting documentation. (Doc. 13-1 at 2.)  The Department of Homeland Security ("DHS")

21  denied the request finding Petitioner failed to show he was not a danger to the community or U.S.

22  security. (Doc. 13-1 at 3.)

23    On October 18, 2024, Petitioner again requested release on parole. (Doc. 13-1 at 3.) DHS

24  denied the request because Petitioner failed to provide any new evidence. (Doc. 13-1 at 3.)  On

25  December 19, 2024, Petitioner filed a fourth request for parole. (Doc. 13-1 at 3.) DHS again denied the

26  request finding no new evidence. (Doc. 13-1 at 3.)   On May 27, 2025, Petitioner requested parole a

27  fifth time. (Doc. 13-1 at 3.)  He withdrew his request because he did not have any new information.

28  (Doc. 13-1 at 3.)

1     Petitioner has been in removal proceedings since April 16, 2024. (Doc. 13-1 at 2.) Removal

2   proceedings have been ongoing, and Petitioner has requested several continuances. On June 27, 2024,

3   the Immigration Judge ("IJ") granted Petitioner's June 26, 2024, request to reschedule until late July

4   2024 for attorney preparation. (Doc. 13-1 a 3.)  At the August 1, 2024, hearing, the IJ granted

5   Petitioner additional time to prepare the case. (Doc. 13-1 at 3.)

6     On September 5, 2024, the IJ granted Petitioner's request for a final hearing. (Doc. 13-1 at 3.)

7   The final hearing was set for November 5, 2024, but on October 17, 2024, Petitioner asked for another

8   continuance. (Doc. 13-1 at 3.)  On October 24, 2024, the IJ granted the request. (Doc. 13-1 at 3.)

9     On January 23, 2025, Petitioner informed the IJ that he was ready to proceed on his

10  applications for relief. (Doc. 13-1 at 3.) The IJ set a merits hearing on his applications for relief for

11  March 12, 2025. (Doc. 13-1 at 3.)

12    Petitioner has presented evidence at four hearings held on March 12, May 9, June 30, and

13  August 26, 2025. (Doc. 13-1 at 3.) Petitioner's next removal hearing was set for September 19, 2025,

14  to permit Petitioner to finish testifying and to call two expert witnesses. (Doc. 13-1 at 3.) Respondent

15  expects that DHS will set one more hearing to complete expert testimony. (Doc. 13-1 at 3.)  As of the

16  date of this Order, Petitioner remains in detention.

17  **II.     DISCUSSION**

18        A.  Motion to Dismiss

19    Habeas corpus petitions are subject to summary dismissal pursuant to Rule 4 of the Rules

20  Governing Section 2254 Cases in the United States District Courts.  The provisions of Rule 4, which

21  are applicable to § 2241 petitions under Rule 1(b), provide in pertinent part: "If it plainly appears from

22  the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the

23  judge must dismiss the petition and direct the clerk to notify the petitioner."  The Advisory Committee

24  Notes to Rule 8 indicate that the Court may dismiss a petition for writ of habeas corpus, either on its

25  own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the

26  petition has been filed.

27  //

28  //

3

B. Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). Pertinent here, the Supreme Court specifically directed that federal courts have jurisdiction to review a constitutional challenge to a non-citizen's detention. See Demore v. Kim, 538 U.S. 510, 517 (2003).

C. Mandatory Detention under 8 U.S.C. § 1225(b)(1)

Petitioner states he has been in continuous detention since approximately April 16, 2024. He contends the approximately 18-month period has become prolonged and indefinite, and he should be given a bond hearing, or in the alternative, released from custody.

1. Statutory Background

A non-citizen who is present in the United States but has not been admitted is considered an applicant for admission. 8 U.S.C.A. § 1225(a)(1). Such applicant is subject to expedited removal if the applicant (1) is inadmissible because he or she lacks a valid entry document; (2) has not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) is among those whom the Secretary of Homeland Security has designated for expedited removal. 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii)(I)–(II). Once "an immigration officer determines" that a designated applicant "is inadmissible," "the officer [must] order the alien removed from the United States without further hearing or review." 8 U.S.C.A. § 1225(b)(1)(A)(i). Here, Petitioner was determined inadmissible and placed in expedited removal proceedings.

If an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." 8 U.S.C.A. §§ 1225(b)(1)(A)(i)–(ii). The point of this screening interview is to determine whether the applicant has a "credible fear of persecution." § 1225(b)(1)(B)(v). If the asylum officer finds an applicant's asserted

1    fear to be credible, the applicant will receive "full consideration" of his asylum claim in a standard

2    removal hearing. 8 C.F.R. § 208.30(f); see 8 U.S.C. § 1225(b)(1)(B)(ii). If the asylum officer finds

3    that the applicant does not have a credible fear, a supervisor will review the asylum officer's

4    determination. 8 C.F.R. § 208.30(e)(8). If the supervisor agrees with it, the applicant may appeal to an

5    immigration judge, who can take further evidence and "shall make a de novo determination." 8

6    U.S.C.A. §§ 1003.42(c), (d)(1); see 8 U.S.C. § 1225(b)(1)(B)(iii)(III). Here, Petitioner made a claim

7    for asylum during the screening interview. The immigration court has been holding evidentiary

8    hearings on the merits of Petitioner's asylum claim.  The most recent hearing was set for September

9    19, 2025.

10          Regardless of whether the applicant receives full or expedited review, he or she is not entitled

11   to immediate release. Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 111 (2020). They "shall

12   be detained pending a final determination of credible fear of persecution and, if found not to have such

13   a fear, until removed." Id. (citing 8 U.S.C.A. § 1225(b)(1)(B)(iii)(IV)). Likewise, applicants who are

14   found to have a credible fear may also be detained pending further consideration of their asylum

15   applications. Id. (citing 8 U.S.C.A. § 1225(b)(1)(B)(ii)). In either case, the applicant must be detained

16   until the conclusion of those proceedings. Jennings v. Rodriguez, 583 U.S. 281, 297 (2018).  However,

17   an applicant "may be temporarily released on parole 'for urgent humanitarian reasons or significant

18   public benefit.'" Id. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3

19   (2017)).  Said parole request is considered by designated ICE Enforcement Removal Operations

20   ("ERO") officers. 8 C.F.R. § 212.5(a). "Such parole, however, 'shall not be regarded as an admission

21   of the alien.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

22                    2.      Due Process in Prolonged Immigration Detention

23          The parties acknowledge that Petitioner has been deemed inadmissible and is in removal

24   proceedings subject to mandatory detention pursuant to § 1225(b).  Petitioner contends he has been

25   unreasonably detained for approximately 18 months without a bond hearing in violation of his due

26   process rights.  He argues that due process requires he should be granted a bond hearing before an

27   immigration judge to determine whether he is a risk of flight or danger to the community.

28

1    The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of

2    life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment

3    entitles aliens to due process of law in deportation proceedings," Reno v. Flores, 507 U.S. 292, 306

4    (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional

5    problem," Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Supreme Court nevertheless has

6    recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of

7    [the deportation] process." Demore v. Kim, 538 U.S. 510, 531 (2003); see also Carlson v. Landon, 342

8    U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure").

9    In analyzing whether prolonged detention violates due process, many courts have looked to

10   Justice Kennedy's concurrence in Demore, which stated that, "since the Due Process Clause prohibits

11   arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled

12   to an individualized determination as to his risk of flight and dangerousness if the continued detention

13   became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring).

14   Several courts including the Third, Sixth, and Ninth Circuit, as well as numerous district courts

15   including this Court, have found that unreasonably long detention periods may violate the due process

16   clause. See, e.g., Rodriguez v. Marin ("Rodriguez IV"), 909 F.3d 252, 256 (9th Cir. 2018) (the Ninth

17   Circuit asserted "grave doubts that any statute that allows for arbitrary prolonged detention without

18   any process is constitutional...."); Diop v. ICE/Homeland Sec., 656 F.3d 221, 235 (3d Cir. 2011)

19   (detention of an alien for a period of nearly three years without further inquiry into whether it was

20   necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the

21   community, was unreasonable, and, therefore, a violation of the Due Process Clause"); German Santos

22   v. Warden Pike, 965 F.3d 203 (3d Cir. 2020) (reversing and remanding to district court to order bond

23   hearing while detained under § 1226(c)); Maksim v. Warden, 1:25-cv-00955-SKO, 2025 WL 2879328

24   (E.D. Cal. Oct. 9, 2025) (ordering bond hearing for noncitizen detained under § 1225(b)(1) for 11

25   months); Diep v. Wofford, 1:24-cv-01238-SKO, 2025 WL 604744 (E.D. Cal Feb. 25, 2025) (ordering

26   bond hearing for noncitizen detained under 8 U.S.C. § 1226(c) for 13 months); A.E. v. Andrews, 1:25-

27   cv-00107-KES-SKO, 2025 WL 1424382 (E.D. Cal. May 16, 2025) (ordering bond hearing for

28   noncitizen detained under 8 U.S.C. § 1225(b) for 20 months).

1      The Ninth Circuit has also noted that many courts have applied the Mathews[1] test in

2   considering due process challenges in the immigration context. Rodriguez Diaz v. Garland, 53 F.4th

3   1189, 1206 (9th Cir. 2022). However, the Supreme Court, when confronted with constitutional

4   challenges to immigration detention, has not resolved them through express application of Mathews.

5   See, e.g., Demore, 538 U.S. at 523, 526–29; see also Dusenbery v. United States, 534 U.S. 161, 168,

6   122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("[W]e have never viewed Mathews as announcing an all-

7   embracing test for deciding due process claims."). Nevertheless, several district courts in the Ninth

8   Circuit including this Court have employed the Mathews test in the context of evaluating whether due

9   process entitles a petitioner to a bond hearing. See, e.g., Jensen v. Garland, 2023 WL 3246522, at *4

10  (C.D. Cal. 2023); Galdillo v. U.S. Dep't of Homeland Sec., 2021 WL 4839502, at *3 (C.D. Cal. 2021);

11  Jimenez v. Wolf, 2020 WL 510347, at *3 (N.D. Cal. 2020); Riego v. Scott, 2025 WL 660535 (E.D.

12  Cal. 2025).

13      The Ninth Circuit has also noted the common use of the Mathews test and has assumed,

14  without deciding, that it applies to due process claims in the immigration detention context. Rodriguez

15  Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Thus, the Court finds application of the

16  Mathews test in this case appropriate.

17      Under the Mathews test, the "identification of the specific dictates of due process generally

18  requires consideration of three distinct factors." Mathews, 424 U.S. at 334–35.  "First, the private

19  interest that will be affected by the official action; second, the risk of an erroneous deprivation of such

20  interest through the procedures used, and the probable value, if any, of additional or substitute

21  procedural safeguards; and finally, the Government's interest, including the function involved and the

22  fiscal and administrative burdens that the additional or substitute procedural requirement would

23  entail." Id. at 335.

24      In the first factor, the Court evaluates Petitioner's private interest in being free from detention

25  against the government's stated interests in protecting the public from a risk of danger and any risk of

26  flight to avoid removal. Petitioner has been detained approximately 18 months. Compared to the six-

27

28  [1] Mathews v. Eldridge, 424 U.S. 319 (1976).

1    month presumptive period set forth in <u>Zadvydas</u> beyond which continued detention becomes

2    prolonged, Petitioner's 18-month detention qualifies as prolonged. <u>Zadvydas</u>, 533 U.S. at 701. The

3    Ninth Circuit has also held that an individual's private interest in "freedom from prolonged detention"

4    is "unquestionably substantial." <u>Singh v. Holder</u>, 638 F.3d 1196, 1208 (9th Cir. 2011).

5            In <u>Rodriguez Diaz v. Garland</u>, the Ninth Circuit stated that "in evaluating the first prong of the

6    <u>Mathews</u> analysis, it is not sufficient to simply count the months of detention. The process received

7    during this time, the further process that was available to him, and the fact that his detention was

8    prolonged due to his decision to challenge his removal order must also be considered. 53 F.4th at

9    1208. The Ninth Circuit stated it was "important not to overstate the strength of Petitioner's showing

10   under the first <u>Mathews</u> factor." 53 F.4th at 1213. Here, unlike the petitioner in <u>Rodriguez Diaz</u>,

11   Petitioner has not received the benefit of a bond hearing.  The Ninth Circuit noted that detentions

12   longer than six months were considered "prolonged" in cases such as this where "no individualized

13   bond hearings had taken place at all." <u>Id</u>. at 1207. The appellate court found this distinction

14   significant. <u>Id</u>.  Thus, Petitioner's private interest in being free from prolonged detention of 18 months

15   weighs in his favor.

16           The Court also considers whether the reason for the lengthy period of detention is due to

17   Petitioner's own actions. <u>Rodriguez Diaz</u>, 53 F.4th at 1208; <u>Demore</u>, 538 U.S. at 530-31. Here, the

18   length of detention is almost entirely due to Petitioner's requests. As previously noted, Petitioner was

19   placed in expedited removal proceedings. He sought asylum and then requested multiple continuances.

20   The 7-month period from June 2024 to January 2025 was entirely due to Petitioner's requests for

21   continuances. Since March 2025, Petitioner has been litigating his application for relief from removal

22   in immigration court. He has attended four evidentiary hearings, and the fifth hearing was set for

23   September 19, 2025.  It is difficult to ascertain an endpoint to removal proceedings, but it is clear

24   proceedings could take a substantial amount of time.  It is unknown when the IJ will decide the

25   application for relief. If the decision is against Petitioner, he still has other avenues available for relief

26   including an appeal to the BIA and a petition for review to the Ninth Circuit Court of Appeals.

27

28

8

1    In sum, Petitioner's detention of 18 months is longer than the 6-month presumptively

2 reasonable period.  Given the fact that no neutral arbiter has determined in that time whether Petitioner

3 presents a risk of danger to the public or a flight risk, the first factor weighs in favor of Petitioner.

4    As to the second factor, "the risk of an erroneous deprivation of [Petitioner's] interest through

5 the procedures used, and the probable value, if any, of additional or substitute procedural safeguards,"

6 Mathews, 424 U.S. at 335, the Court finds this factor also weighs in favor of Petitioner. The "risk of

7 an erroneous deprivation of [a petitioner's] interest is high" where "[h]e has not received any bond or

8 custody redetermination hearing[.]" Jimenez, 2020 WL 510347, at *3.  Thus, the probable value of

9 additional procedural safeguards, i.e., a bond hearing, is high, because Respondents have provided

10 virtually no procedural safeguards at all. Given that Petitioner has been held without a bond hearing

11 for one and a half years and it is not clear when detention will end, the risk of erroneous deprivation

12 weighs in favor of granting a bond hearing.

13    In the third factor, the Court weighs the government's interest, "including the function

14 involved and the fiscal and administrative burdens that the additional or substitute requirement would

15 entail." Mathews, 424 U.S. at 335. As previously discussed, the government has a strong interest in

16 effecting removal, Demore, 538 U.S. at 531, and in protecting the public from danger, Prieto-Clark,

17 534 F.3d at 1062-65.  As other courts have recognized, however, the key government interest at stake

18 here "is not the continued detention of Petitioner, but the government's ability to detain him without a

19 bond hearing." Zagal-Alcaraz v. ICE Field Office Director, 2020 WL 1862254, at *7 (D. Or. 2020)

20 (collecting cases).  Here, the government's asserted interest is hinged on mere speculation about

21 Petitioner's risk of flight or dangerousness. Petitioner seeks a bond hearing, not an unqualified release.

22 Providing a bond hearing would not undercut the government's asserted interest in effecting removal.

23 Indeed, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger

24 to the community. See In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006).  Given "the minimal cost of

25 conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether

26 Petitioner's continued detention is justified," courts have concluded that "the government's interest is

27 not as weighty as Petitioner's." Zagal-Alcaraz, 2020 WL 1862254, *7 (quoting Lopez Reyes v.

28

9

1  Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019)). The Court agrees with this analysis. Although the

2  Government has a strong interest, it is outweighed by Petitioner's.

3          In sum, the three Mathews factors weigh in Petitioner's favor and outweigh the government's

4  interest in further detention without inquiry into whether he represents a flight risk or danger to the

5  community.  The Court thus finds that Petitioner's prolonged detention violates his Fifth Amendment

6  due process rights.

7                  3.      Remedy

8          "The Court finds, consistent with other post-Jennings cases, that the appropriate remedy is a

9  bond hearing before an immigration judge[.]" Lopez v. Garland, 631 F. Supp. 3d 870, 882 (E.D. Cal.

10  2022). See Martinez Leiva v. Becerra, No. 23-cv-02027-CRB, 2023 WL 3688097, at *9 (N.D. Cal.

11  May 26, 2023) ("The Court further concludes that the appropriate remedy here is a bond hearing, and

12  that an IJ, not the Court, should conduct it[.]" (footnote omitted)); Mansoor v. Figueroa, No. 3:17-cv-

13  01695-GPC (NLS), 2018 WL 840253, at *4 (S.D. Cal. Feb. 13, 2018) ("The Court finds the IJ is

14  uniquely qualified and situated to make neutral administrative determinations about Petitioner's

15  eligibility for release on bond and/or placement in a supervised release program such as ISAP.").

16          The Court now turns to the burden of proof at the bond hearing and which party should bear

17  the burden. Respondent contends Petitioner should bear the burden of proof and Petitioner contends

18  the government must bear the burden of proof by clear and convincing evidence that Petitioner poses a

19  danger or flight risk.  In Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011), in relation to

20  immigration provisions 8 U.S.C. §§ 1225(b), 1226(c), and 1231(a)(6), the Ninth Circuit "concluded

21  that for these hearings to comply with due process, the government had to bear the burden of proving

22  by clear and convincing evidence that the alien poses a flight risk or a danger to the community."

23  Rodriguez Diaz, 53 F.4th at 1196 (citing Singh, 638 F.3d at 1203–05). Although Rodriguez Diaz may

24  have declined to impose the standard articulated in Singh, the panel majority specifically stated that it

25  was not "decid[ing] whether Singh remains good law in any respect following Jennings" and

26  recognized that Singh was based "on general principles of procedural due process, reasoning that a

27  detained person's liberty interest is substantial." Rodriguez Diaz, 53 F.4th at 1202 n.4, 1199.

28  Additionally, the Ninth Circuit has suggested post-Jennings that Singh remains good law in Martinez

                                          10

1    v. Clark, which took "no position" on "[w]hether due process requires a bond hearing for aliens

2    detained under § 1226(c)," but did address "the scope of federal court review of those bond

3    determinations" and found with respect to a bond hearing for a noncitizen detained under § 1226(c)

4    that "the BIA properly noted that the government bore the burden to establish by clear and convincing

5    evidence that Martinez is a danger to the community." Martinez, 36 F.4th at 1223, 1231. On remand,

6    and after Rodriguez Diaz was decided, the Martinez panel reconfirmed "that the government bore the

7    burden to establish by clear and convincing evidence that Martinez is a danger to the community" and

8    "that the BIA applied the correct burden of proof." Martinez v. Clark, 124 F.4th 775, 785, 786 (9th

9    Cir. 2024).

10         Thus, the government must justify Petitioner's continued confinement under § 1225(b) by clear

11    and convincing evidence that Petitioner is a flight risk or a danger to the community. See A.E. v.

12    Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025)

13    (recommending that "Respondent be ordered to provide Petitioner with a bond hearing before an

14    immigration judge at which Respondent must justify Petitioner's continued detention by clear and

15    convincing evidence" in § 1225(b) context); Sanchez-Rivera v. Matuszewski, No. 22-cv-1357-MMA

16    (JLB), 2023 WL 139801, at *7 n.5 (S.D. Cal. Jan. 9, 2023) (following "an overwhelming majority of

17    courts that have held that the government must justify the continued confinement of a non-citizen

18    detainee under § 1226(c) by clear and convincing evidence that the non-citizen is a flight risk or a

19    danger to the community"). In the event Petitioner is determined not to be a danger to the community

20    and not to be so great a flight risk as to require detention without bond, the IJ should consider

21    Petitioner's financial circumstances or alternative conditions of release. See Hernandez v. Sessions,

22    872 F.3d 976, 1000 (9th Cir. 2017) ("Plaintiffs are likely to succeed on their challenge under the Due

23    Process Clause to the government's policy of allowing ICE and IJs to set immigration bond amounts

24    without considering the detainees' financial circumstances or alternative conditions of release.");

25    Black v. Decker, 103 F.4th 133, 138 (2d Cir. 2024) (The district court "correctly directed the

26    immigration judge ("IJ"), in setting his bond and establishing appropriate terms for his potential

27    release, to consider his ability to pay and alternative means of assuring appearance.").

28

1    **III.    ORDER**

2         For the foregoing reasons, IT IS HEREBY ORDERED:

3         1.      Respondent's motion to dismiss (Doc. 13) is DENIED.

4         2.      The petition for writ of habeas corpus is GRANTED.

5         3.      Respondent is ORDERED to provide Petitioner, within thirty (30) days, an

6    individualized bond hearing before an immigration judge that complies with the requirements

7    set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), at which:

8              a. "the government must prove by clear and convincing evidence that [Petitioner] is a

9              flight risk or a danger to the community to justify denial of bond," Singh, 638 F.3d at

10             1203; and

11             b. the IJ should consider Petitioner's financial circumstances or alternative conditions of

12             release in the event Petitioner is determined not to be a danger to the community and

13             not to be so great a flight risk as to require detention without bond.

14        4.      The Clerk of Court is directed to enter judgment, terminate outstanding motions, and

15   close the case.

16

17   IT IS SO ORDERED.

18   Dated:    **November 5, 2025**                    /s/ *Sheila K. Oberto*

19                                              UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28